Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7673 | **DATE** | 5/10/2002 |
| **CASE TITLE** | Zurich American Ins. Co. vs. Watts Industries, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   By 5:00 p.m. Monday, May 13, 2002, the parties shall submit a proposed temporary restraining order that conforms to the attached opinion. The parties shall also attempt to agree on a briefing schedule with respect to Zurich's arbitration petition and inform the court as well whether any discovery is necessary. Status hearing set for Wednesday, May 22 at 9:30 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | MAY 1 3 2002 date docketed | |
| ✓ | Notified counsel by telephone. | | 39 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 5/10/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | MPJ mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

ZURICH AMERICAN INSURANCE CO., )
)
    Plaintiff, )
)
v. ) No. 01 C 7673
)
SUPERIOR COURT FOR THE STATE OF )
CALIFORNIA, COUNTY OF LOS )
ANGELES, )
)
    Respondent, )
)
WATTS INDUSTRIES, INC. and )
JAMES JONES COMPANY )
)
    Real Parties. )
)

**MEMORANDUM OPINION AND ORDER**

During 1991-96, Zurich American Insurance Co. ("Zurich"), of Schaumburg, Illinois, entered into certain insurance arrangements with Watts Industries ("Watts"), a Delaware Corporation whose principal place of business is North Andover, Massachusetts, and James Jones Co., a California corporation that was a wholly owned subsidiary of Watts from 1987 through 1996, and was insured under the agreements in question. The arrangements included policies providing for a duty to defend against lawsuits, accompanied by deductibility agreements on the side containing broad arbitration provisions. Watts and Jones were sued by third parties in California court state for fraud in connection with sales of water distribution products containing excessive levels of lead to

39

municipal water systems. *See Rothschild v. Tyco Int'l*, No. 726930 (Cal. Super Ct. San Diego), filed May 7, 1999 ("*Rothschild*"), and *Armenta v. James Jones Co.*, No BC 173487 (Cal. Super. Ct., Los Angeles), filed June 25, 1997 ("*Armenta*"). Watts sued Zurich for coverage under the agreements in California state Superior Court on February 14, 2001 (the "California action"); Jones filed a parallel lawsuit that was later consolidated with the California Action. Zurich states that Watts repudiated its obligations under the deductibility agreements on September 6 2001, because Zurich refused to defend these actions. On October 2, 2001, Watts filed a motion for summary adjudication in Superior Court against Zurich. Zurich demanded arbitration, but Watts denied there was anything to arbitrate. On October 4, 2001, Zurich filed a motion to compel arbitration in this court. On October 9, 2001, Zurich asked the California state court for a stay of Watts' and Jones' action pending a decision on arbitrability, but on October 30, 2001, that court refused to stay the action, denying that there was any arbitrable dispute, and granting Watts' motion for summary adjudication, a nonfinal order. This was memorialized in two orders of November 27, 2001. Zurich appealed in the California state courts (and later lost). In December 2001, Watts moved in this district to dismiss Zurich's petition to compel arbitration, which motion was denied.

Zurich now asks me to enter a temporary restraining order ("TRO") enjoining the California state court from enforcing the orders of November 27, 2001. The first issue concerns my jurisdiction. The defendants argue that I lack subject matter jurisdiction to grant the requested relief because of the *Rooker-Feldman* doctrine. This doctrine essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims "inextricably intertwined" with state court determinations. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine "bars federal jurisdiction when the federal plaintiff alleges that [its] injury was caused by a state court judgment." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). The reason is that the only court with the authority to review such judgments is the United States Supreme Court, and therefore litigants must appeal state court rulings "through their state courts and then to the Supreme Court." *Id.* Without the doctrine, lower federal courts essentially would be engaging in appellate review of state court rulings. In deciding whether to apply the *Rooker-Feldman* doctrine, I ask:

> is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

3

*GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993). This formulation is usually referred to as the "source of injury" test (*i.e.*, is the source of injury the judgment itself or something distinct from it?). *Garry v. Geils,* 82 F.3d 1362, 1367 (7th Cir. 1996).

With regard to the order of the California Superior Court granting summary adjudication for the defendants and against Zurich on the duty to defend in the *Armenta* action, application of *Rooker-Feldman* is in order. Zurich argues that *Rooker-Feldman* does not apply because Zurich initiated its federal action before the state court rendered any determination on the issues Zurich seeks to arbitrate. It cites a Second Circuit Case finding that *Rooker-Feldman* is inapplicable when the federal plaintiff "filed its petitions to compel arbitration of the [federal defendants'] state actions before the state courts had made any rulings on the merits in those actions." *Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 138 (2d Cir. 1997). Even if the Seventh Circuit would apply this rule, that would not give me jurisdiction over the duty to defend issue in the *Armenta* action, where there was a ruling on the merits reached in a matter filed in February 2001, well before Zurich filed its petition to compel arbitration in October 2001. *Doctor's Associates* would be distinguishable anyway because there the plaintiffs obtained default judgment in state court that they sought to have set aside in federal court, but here, with respect

4

to the *Armenta* action, the state court reached a reasoned judgment on the merits of a claim that Zurich seeks to have arbitrated, the existence under the contract of that duty.

However, that is the limit of *Rooker-Feldman* here, because the order of October 30, 2001, memorialized in written opinions of November 27, 2001, reached only the duty to defend in *Armenta*, and not any other issue, including whether there is a duty to defend in *Rothschild* or whether any dispute about *Rothschild*, including the existence of a duty to defend, is arbitrable. In that case there is no state court order or judgment for which the plaintiffs might improperly seek "review" in federal court. It is not claimed that the state court has decided any issue in *Rothschild* or indeed any other issue in *Armenta*, and so *Rooker-Feldman* cannot apply to those issues where there are no state court rulings.

Watts also invokes the Anti-Injunction Act, 28 U.S.C. § 2283 This states that a federal court may not "grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." However, this case involves the "necessary in aid of [my] jurisdiction" clause, because I have diversity jurisdiction in this matter, but I would lose it in view of the operation of the *Rooker-Feldman* doctrine if the state court were to rule in *Rothschild* or on any other issue in *Armenta*. Watts argues that there are no cases where any federal

5

court has granted an injunction prior to deciding whether arbitration is proper. That is not true. The Fourth Circuit has directed that this be done, holding that "absent exceptional circumstances, a federal district court has 'no right to stay the federal proceedings" brought under the FAA even though a similar action between the parties was pending in the state court.'" *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991) (citations omitted) (abstention context), and ordering the district court to "decide the question under federal law whether the dispute is arbitrable." *Id.*

I now turn to whether it is appropriate to issue the TRO with respect to proceedings in the California Superior Court relating to the issues raised by Zurich's petition in this court to compel arbitration, setting aside the duty to defend issue in *Armenta*. Injunctive relief is an extraordinary and drastic remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Five factors figure into the determination of whether a preliminary injunction should be granted. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 385-88 (7th Cir. 1984). As a threshold matter, the plaintiff must show (1) a likelihood of success on the merits, (2) irreparable harm if the preliminary injunction is denied, and (3) the inadequacy of any remedy at law. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Once this

threshold showing is made, I balance (4) the harm to the plaintiff if the preliminary injunction were wrongfully denied against the harm to the defendants if the injunction were wrongfully granted, and (5) the impact on persons not directly concerned in the dispute (the "public interest"). *Id.* The standards I must apply when determining whether a TRO is appropriate are analogous to the standards applicable when determining whether preliminary injunctive relief is appropriate. *Consumer Sales & Marketing, Inc. v. Digital Equip. Corp.*, No. 95 C 5049, 1995 WL 548765, at *3 (N.D. Ill. Sept. 13, 1995).

Watts opposes the TRO, arguing that there is no showing of irreparable harm nor any likelihood of success. The risk of irreparable harm is that Zurich may lose any possibility of submitting the claims it may still submit to arbitration if the state court enters a judgment on the merits with respect to *Rothschild* and issues regarding the deductible agreements in *Armenta*. In enacting the Federal Arbitration Act, 9 U.S.C. § 2, under the authority of which Zurich would prefer to proceed, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984). If denied the right to have its petition to compel arbitration heard, Zurich may be compelled to undergo costlier

litigation that it might avoid if that petition is granted, and if the California courts decide in the remaining cases and issues as they have in *Armenta*, then *Rooker-Feldman* may bar any possibility that I could even hear the question. That is enough for irreparable harm.

As for likelihood of success, Zurich must only show that "its chances for success are better than negligible." *Roland Mach.*, 749 F.2d at 387. Watts' letter of Sept 6, 2002, might well be construed as anticipatory repudiation and breach of the deductible side agreements containing the broad arbitration clause. Watts argues that it was no such thing as an anticipatory repudiation, but only a proposition offered as part of settlement negotiations. That may be, but the case is not so clear cut that Zurich's chances of prevailing are less than negligible. As to whether the duty to defend in *Rothschild*, the subject of the main policy, is within the scope of the arbitration clause in the deductible agreement, that is a matter of contract interpretation, *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995), but the Supreme Court has said that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "Federal policy requires us to construe arbitration clauses as broadly as possible." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250 (2d Cir. 1991). Here,

the arbitration clauses are broad, at least one of which requires "all matters in difference between the parties" to be arbitrated.[1] The breadth of that language suggests that Zurich has some likelihood of prevailing on the issue of the arbitrability of the duty to defend in *Rothschild*. The Southern District of New York has rejected the sort of argument urged by Watts in *Petition of Home Ins. Co.,* 908 F. Supp. 180, 183 (S.D.N.Y. 1995) (Koetl, J.).

The other elements for extraordinary relief are not in dispute. I therefore GRANT Zurich's motion for a TRO enjoining the California Superior Court from pursuing further proceedings in *Rothschild* pending resolution of Zurich's petition to compel arbitration in that case, and enjoining the California Superior Court from pursuing further proceedings in *Armenta*, apart from enforcing its orders of October 30 and November 27, 2001, or other matters concerning the duty to defend issue in that case which was the subject of those orders. I DISMISS for want of subject matter jurisdiction Zurich's motion for a TRO enjoining the California Superior Court from pursuing further proceedings in *Armenta* relating to its orders of October 30 and November 27, 2001, finding

---

[1] The language varies from agreement to agreement. Each year there was a separate agreement.

that Zurich had a duty to defend in the *Armenta* action.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:   May 10, 2002