# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7673 | **DATE** | 6/10/2002 |
| **CASE TITLE** | Zurich American Ins. Co. vs. Watts Industries, Inc., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for preliminary injunction is granted in part with respect to Watts' claim, but not to James Jones. The court enjoins the California Superior Court from pursuing further proceedings in Rothschild as far as Watts goes, pending resolution of plaintiff's petition to compel arbitration. The court also enjoins the California Superior Court from pursuing further proceedings in Armenta with respect to Watts. The court denies plaintiff's motion for preliminary injunction with respect to James Jones. Enter Memorandum Opinion and Order. Plaintiff's memorandum in support of its petition to compel arbitration is due by 6/24/02; response by 7/15/02; and any reply by 7/29/02. Hearing set for 8/12/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | **JUN 1 1 2002** | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 65 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | | date mailed notice | |
| | | | mailing deputy initials | |

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

JUN 1 1 2002

| | |
|---|---|
| ZURICH AMERICAN INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 01 C 7673 |
| | ) |
| SUPERIOR COURT FOR THE STATE OF | ) |
| CALIFORNIA, COUNTY OF LOS | ) |
| ANGELES, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| WATTS INDUSTRIES, INC. and | ) |
| JAMES JONES COMPANY, | ) |
| | ) |
| Real Parties. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Zurich American Insurance Co. ("Zurich"), of Illinois,
extended insurance coverage against lawsuits to Watts Industries
("Watts"), a Delaware corporation whose principal place of business
is in Massachusetts, and James Jones Co., a California corporation
that was a wholly owned subsidiary of Watts. Watts and James Jones
were sued in two lawsuits by third parties in the California state
courts, but Zurich refused to pay the defense costs. The defendants
here sued Zurich in those courts, and won a summary adjudication,
while Zurich petitioned here in the Northern District of Illinois
for arbitration. Zurich now asks for a preliminary injunction
barring the California courts from proceeding in the matters
concerning the two lawsuits by third parties. I grant the relief



requested in part with respect to Watts but not to James Jones.

I.

During 1991-96, Zurich extended insurance coverage against lawsuits to Watts and James Jones (a wholly owned subsidiary of Watts from 1987 through 1996). The policies provided for a duty to defend or indemnify against lawsuits. Zurich and Watts (but not James Jones) also signed deductible agreements containing broad arbitration provisions. Watts and James Jones were sued by third parties in California for fraud in connection with sales of water distribution products containing excessive levels of lead to municipal water systems. *See Rothschild v. Tyco Int'l*, No. 726930 (Cal. Super. Ct. San Diego, filed May 7, 1999 ("*Rothschild*"), and *Armenta v. James Jones Co.*, No BC 173487 (Cal. Super. Ct., Los Angeles, filed June 25, 1997 ("*Armenta*"). Watts sued Zurich for coverage under the agreements in California Superior Court on February 14, 2001; James Jones filed a parallel lawsuit that was later consolidated with the Watts action.

On October 2, 2001, Watts filed a motion for summary adjudication in Superior Court against Zurich. Zurich demanded arbitration, but Watts denied there was anything to arbitrate. On October 4, 2001, Zurich filed a motion to compel arbitration in this court. Therein, Zurich stated that Watts repudiated its obligations under the deductible agreements in a letter of September 6, 2001, because Zurich refused to defend these actions.

2

On October 9, 2001, Zurich asked the California state court for a stay of Watts' and James Jones' action pending a decision on arbitrability, but on October 30, 2001, that court refused to stay the action, denying that there was any arbitrable dispute, and granting Watts' motion for summary adjudication on the duty to defend in *Armenta*. This was memorialized in two orders of November 27, 2001, one dealing with arbitrability and the other with the duty to defend in *Armenta*. Zurich appealed in the California state courts. In December 2001, Watts moved in this district to dismiss Zurich's petition to compel arbitration, which motion was denied by Judge Alesia, to whom this case was initially assigned. On March 7, 2002, The California Court of Appeal dismissed Zurich's appeal of the November 27, 2001 order on the grounds that the denial of a motion to stay is not appealable.

In May, 2002, Zurich asked me to enjoin the California Superior Court from pursuing further proceedings in *Armenta,* so that it might have me determine whether certain claims at issue in that case and *Rothschild* were arbitrable. I held that the *Rooker-Feldman* doctrine barred me from reviewing the state court decision on the matter where I found that it had reached a determination on the merits, the duty-to-defend issue in *Armenta*, but issued a temporary restraining order ("TRO") barring that court from further proceedings in *Armenta* that were unrelated to that discrete issue, and from further proceedings in *Rothschild*. *See* 2002 WL 1009147

3

(N.D. Ill. May 13, 2002).

Zurich now asks for a preliminary injunction of wider scope than the TRO I issued, encompassing both *Arementa* and *Rothschild*, and arguing that there are no *Rooker-Feldman* problems. The defendants oppose the motion, rearguing the *Rooker-Feldman* issue, and stating that the scope of my TRO was too narrow, and partly raising a new argument that the requirements for a preliminary injunction are not satisfied. As explained below, I find no reason to change my view on the jurisdictional question, and find that defendants' new argument about the likelihood of success, though close, is unsuccessful. I therefore grant the motion for a preliminary injunction in the modified form indicated below.

II.

I begin with the jurisdictional question. The *Rooker-Feldman* doctrine essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims "inextricably intertwined" with state court determinations. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine "bars federal jurisdiction when the federal plaintiff alleges that [its] injury was caused by a state court judgment." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). Zurich argues that the defendants are judicially estopped from arguing that I lack subject matter jurisdiction with respect

4

to the duty-to-defend issue in *Armenta* on *Rooker-Feldman* grounds, because they prevailed in the California appellate courts arguing that a state court order denying a stay in *Armenta* does not amount to a denial or dismissal of a petition to compel arbitration, the denial of which, Zurich says, would be a predicate of the applicability of *Rooker-Feldman*, and which Zurich claims the defendants deny before me. However, even if there were some form of judicial estoppel here, *Rooker-Feldman* poses the question of my subject matter jurisdiction, and I would be obliged to raise it *sua sponte*, even if the defendants could not. *See Joyce v. Joyce*, 975 F.2d 379, 386 (7th Cir. 1992).

Zurich argues further that *Rooker-Feldman* does not apply because the rulings it seeks are based on the Federal Arbitration Act, 9 U.S.C. 1 *et seq.* ("FAA"), rather than the Cal. Civ. Proc. Code § 1281.4, the basis of the Superior Court's orders of October 30, and November 27, 2001. However, Zurich does not explain how I can possibly grant the relief it seeks based on the FAA without vacating, reversing, overruling, or invalidating the California court's orders, which is precisely what *Rooker-Feldman* prohibits me from doing.

Zurich argues that there is no final order in *Armenta* that *Rooker-Feldman* would bar me from reviewing. The California Superior Court's order of November 27, 2001, memorializing in part its decision of October 30, 2001, reads as follows:

> [T]he claims alleged in the Complaints filed by Watts and
> James Jones, specifically including the duty to defend which
> is the subject of Watts' pending motion for Summary
> Adjudication, is not subject to the arbitration provisions of
> the Deductible Agreements. The determination of whether or not
> Zurich has a duty to defend and/or a duty to indemnify Watts
> and James Jones under the Policies is a condition precedent to
> the application of any deductible agreement.

*Watts Indus. v. Zurich Am. Ins. Co.*, No. BC 245144 (Cal. Sup. Ct. Nov. 27, 2001), at 1. Watts Opposition, Ex. 1. At the October 30 hearing, the court also held that "the motion for summary adjudication of the first and sixth causes of action regarding Zurich's duty to defend [in *Armenta*] is granted." Watts Opposition, Ex. G at 45. That order was memorialized in an opinion of November 27, 2001. In an order of March 7, 2002, the California Court of Appeal dismissed Zurich's appeal because "[t]he denial of a motion to stay is not an appealable order." Ifft Decl., Ex. 2(E). Zurich asks that I treat this order as the only state court determination to which I must "defer" under *Rooker-Feldman*.

I am indeed bound by this decision. But I am also bound by the Superior Court's determination on October 30 and November 27, 2001, that a duty to defend exists in *Armenta*. This is an issue upon which the Court of Appeal made no such ruling, and in any event it would not matter if it had. A summary adjudication is not normally a final order in California law, Cal. Civ. Proc. Code § 437c(j) ("Except where a separate judgment may properly be awarded in the action, no final judgment shall be entered on a motion for summary judgment prior to the termination of the action."), but

6

*Rooker-Feldman* "does not depend on a final judgment on the merits." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n.1 (8th Cir. 1995). I cannot, therefore, review the Superior Court's orders in *Armenta* of October 30 and November 27, 2001, holding that Zurich had a duty to defend.

The defendants argue that the language from the November 27, 2001, order denying arbitrability, quoted above, is broader in scope than I had concluded previously, encompassing the non-arbitrability of any issue in either *Armenta* or *Rothschild*. The key sentence reads: "the claims alleged in the Complaints filed by Watts and James Jones, specifically including the duty to defend which is the subject of Watts' pending motion for Summary Adjudication, is not subject to the arbitration provisions of the Deductible Agreements." This might be read as a judicial holding that the scope of the arbitration agreements, at least provisionally, did not include any and all "claims alleged in the Complaints filed by Watts and James Jones," *i.e.*, that no claim in *Rothschild* and *Armenta* yet presented an arbitrable dispute. If so, *Rooker-Feldman* would bar any federal review of that determination, at least at present. The Superior Court stated that an arbitrable controversy might arise later if Zurich paid defense costs and made a demand for indemnification that was resisted.

I am therefore presented with an issue in the construction of a judicial order. As I read the Superior Court's order, the no-

7

arbitrable dispute claim is more restricted than Watts argues. The Superior Court refers to the claims not subject to arbitration "specifically including the duty to defend which is the subject of Watts' pending motion for Summary Adjudication." That motion, filed October 2, 2001, is limited to the duty to defend in *Armenta*. Moreover, although the key sentence begins with the plural "claims," which might be taken to refer to all claims in both cases, the part of the sentence containing the central determination in the order uses the singular "is" ("is not subject to arbitration"). This clause is positioned after a qualifying clause referring specifically to the duty to defend in *Armenta*.

Construing a judicial order is an exercise analogous in some ways to construing a contract, and in some ways to statutory interpretation. Under Illinois law of contract construction, "specific provisions are entitled to more weight in ascertaining the parties' intent than general provisions." *Premier Title Co. v. Donahue*, 765 N.E.2d 513, 518 (Ill. App. Ct. 2000). Likewise with statutory interpretation, where specific provisions take precedence over general provisions. *People v. Villarreal*, 604 N.E.2d 923, 928 (Ill. 1992). I conclude that the general language about "the claims alleged in the Complaints filed by Watts and James Jones" is controlled by the specific language in the qualifying clause ("specifically including the duty to defend which is the subject of Watts' pending motion for Summary Adjudication"), and that the use

of the singular "is" in the concluding clause ("is not subject to the arbitration provisions of the Deductible Agreements") reflects the Superior Court's intention, picking out as the subject of the sentence "the duty to defend which is the subject of Watts' pending motion for Summary Adjudication [in *Armenta*]."

Therefore, I reject the defendants' arguments that the scope of the Superior Court's no-arbitrability order of November 27, 2001, is any broader than I originally concluded. As I read it, that order cleared the way for the Superior Court to issue the companion order finding that a duty to defend the *Armenta* action existed, and nothing more. Because I have concluded that there are no orders regarding the arbitrability or merits of any further issues in *Armenta* other than the duty to defend, or of any issues in *Rothschild*, as I held in granting the TRO, my jurisdiction over such other questions is not barred by *Rooker-Feldman*.

## III.

A preliminary injunction "is an extraordinary remedy that is only granted where there is a clear showing of need." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Five factors figure into the determination of whether a preliminary injunction should be granted. *Id.* As a threshold matter, the plaintiffs must show (1) a likelihood of success on the merits, (2) irreparable harm if the preliminary injunction is denied, and (3) the inadequacy of any remedy at law. I then balance (4) the harm to plaintiffs if the

9

preliminary injunction were wrongfully denied against the harm to the defendant if the injunction were wrongfully granted, and (5) the impact on persons not directly concerned in the dispute. *Id.; see also Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.,* 149 F.3d 722, 726 (7th Cir. 1998). The defendants argue that Zurich has not satisfied the requirements for a preliminary injunction, notably irreparable harm and likelihood of success on the merits.

I held in issuing the TRO that Zurich's threatened loss of the possibility of arbitration satisfied the irreparable harm requirement. 2002 WL 1009147, at *3. The defendants argue, first, that Zurich has had an opportunity to argue this issue, and so would not lose anything if I were not to bar the California courts from deciding the matter. I disagree. The Superior Court specifically held that that an arbitrable issue might arise in certain circumstances. *See* Order of Nov. 27, 2001. Zurich would lose the opportunity to have that issue, left open by the Superior Court, adjudicated in the forum that the deductible agreements and the FAA specify.

The defendants contend, second, that Zurich has waived the issue of arbitrability of the duty to defend or indemnify in *Armenta* and *Rothschild,* and so has nothing to lose there either. The duty to defend or indemnify in *Armenta,* and the arbitrability (at present) of that issue, have been decided by the California courts, and so is beyond my reach or the reach of any waiver

argument. This does not apply to any argument that the defendants might make the argument about *Rothschild* at a hearing on arbitrability at the appropriate time. I see no reason to change my previous holding that Zurich has a non-negligible chance of success on that issue, sufficient to make a showing of irreparable harm.

Finally, the defendants urge that Zurich cannot establish a reasonable likelihood of success on the anticipatory repudiation claim that it needs to win. This new argument, which works with respect to James Jones but not with respect to Watts, is as follows. Zurich admitted to me that there was no arbitrable controversy until the defendants supposedly anticipatorily repudiated their obligations under the deductible agreements. Response to Motion to Dismiss at 2. But, Watts argues, the letter of September 6, 2001, *see* Watts Opposition, Ex. D(A), does not challenge the validity of those agreements or state that defendant Watts (James Jones was a subsidiary of Watts during the relevant period) would refuse to arbitrate if Zurich were to appropriately seek reimbursement under the Agreements.

The question is whether, in the letter of September 6, 2001, the defendants made an offer to perform in accordance with a reasonable interpretation of the contract, or rather made a clear manifestation that it was not going to perform in accord with any interpretation. The defendants cite Seventh Circuit law that an offer to perform in accordance with a reasonable interpretation of

a contract is not an anticipatory breach. *LAK, Inc. v. Deer Creek Enters.*, 976 F.2d 328, 331-32 (7th Cir. 1992). Anticipatory repudiation requires "a clear manifestation of an intent not to perform in accordance with any other interpretation." *Id.* The Seventh Circuit there was applying Florida law, but Illinois law is parallel:

> The doctrine of anticipatory repudiation requires a clear manifestation of an intent not to perform the contract on the date of performance. That intention must be a definite and unequivocal manifestation that he will not render the promised performance when the time fixed for it in the contract arrives. . . . "[A]n offer to perform in accordance with his own interpretation made by one of the parties is not in itself an anticipatory breach. . . . So, also, the making of a demand upon the other party to a contract that he shall perform in accordance with an interpretation that is not justified by the law is not in itself a repudiation."

*In re Marriage of Olsen*, 528 N.E.2d 684, 686 (Ill. 1988) (quoting 4 Arthur Corbin, *Contracts* § 973, at 911-12 (1951)).

The Illinois Supreme Court added, quoting Corbin, that "such a demand, however, does not require much by way of accompanying expressions in order to justify the other party in understanding that no performance other than that demanded will be accepted." *Id.* at 686-87. I understand this to mean that there is anticipatory repudiation if the other party is thus justified in so understanding. Corbin calls this a "conditional" anticipatory repudiation. *See* Corbin, *Contracts*, § 973. "If one party to a contract, either wilfully or by mistake, demands of the other a performance to which he had no right under the contract, and states

12

definitely that unless his demand is complied with, he will not render his promised performance, an anticipatory breach [conditional in character] has been committed." *Id.*

I now consider whether Watts' letter of September 6, 2001 involves a reasonable interpretation of the contract or shows an intent not to perform in accord with any other interpretation. In the letter, Watts argues that: (1) the deductible agreements (containing the arbitration clauses) do not apply, first to James Jones, which never signed them and Watts cites California precedent that an insurer must provide a defense to James Jones as an additional insured; (2) Zurich breached its duty to defend its insureds by refusing to pay, thus repudiating the policy, and so, under California law, could not rely on a clause of the policy to deny its liability; (3) Zurich had waived its right to enforce the deductible agreements against Watts by failing to mention them during the pendency of the litigation between April 1998 and August 2001; (4) Zurich materially breached the deductible agreements by failing to investigate the *Armenta* and *Rothschild* claims as required by the policies; and (5) even if the deductible agreements applied, Zurich must pay for the defense of the actions over the $500,000 deductible.

Of these claims in the letter of September 6, 2001, (1), (2), and (5) involve issues of contract interpretation and law rather than (mainly) fact, as with (3) and (4). The factual questions

involved in (3) (waiver by conduct) and (4) (failure to investigate) are not suitable for resolution without an evidentiary hearing.

Argument (1) (that James Jones is not a party to the deductible agreements and so is not bound by them), may or may not be right, but is at least a reasonable interpretation of the contract. The defendants' letter of September 6, 2001, involves no anticipatory repudiation with respect to James Jones. This means that Zurich cannot use such anticipatory repudiation in James Jones' case to evade the requirements, if they apply, of the deductible agreements. This argument does not apply to Watts, which was a signatory to those agreements. The argument for Watts must proceed on a different basis.

Arguments (2) and (5) are the central ones with regard to Watts. Under argument (2) (wrongful refusal to defend), Watts cites several California cases indicating generally that the insurer's obligation to defend is of "vital importance to the insured," and that if an insurer "unreasonably refuses to defend," it has breached the contract. This is boilerplate, however. Watts does not actually offer an interpretation of any particular contested provision of any contract that Zurich supposedly breached, thereby repudiating the contract, and thus freeing Watts of any duties under the deductible agreements, much less a satisfactory explanation of how this complicated chain of results was supposed

to follow. With respect to argument (5) (addressing what happens if the deductible agreements apply), Watts states that Zurich may not "apportion or parse its defense costs" because "at least one of the policies issued by Zurich caps the insured's defense costs expenses." Watts waves a hand at "California law," but does not actually cite any cases or statutes. I do not find this to be a reasonable interpretation either. Why should a cap in one contract apply to all? On what legal basis? Watts does not say. With respect to arguments (2) and (5), Watts fails to offer a reasonable (or with (2), any) interpretation of the contract.

Watts does not say outright that it has no intention of performing or that Zurich must perform on its (unjustified) terms and no others. But it does list a set of terms on which the dispute should be resolved, the second of which is that Zurich should pay for any defense costs incurred by it and James Jones. Nothing in the letter gives any indication that there is any give in its position or that it would perform under any other terms. As to arbitration, Watts says nothing, stating instead that if Zurich does not agree to its terms ("We hope that our views are close enough that an agreement can be reached within the next two weeks."), Watts would go back to court. And, as explained, Watts offers no reasonable purely legal interpretation of the contract that would justify its insistence on compliance with its demands.

The question is a close one, but I find that this combination

of arguments and positions, with respect to Watts' coverage (though not James Jones'), is sufficient to establish a reasonable likelihood of success on Zurich's claim that Watts made a conditional anticipatory repudiation, as explained by Corbin and adopted by the Illinois Supreme Court. In the letter of September 6, 2001, Watts demands of Zurich "a performance to which [it] had no right under the contract," or at least to which it does not demonstrate that it has any right, and offers enough by way of "accompanying expressions [that would] justify [Zurich] in understanding that no performance other than that demanded will be accepted." *See Olsen*, 528 N.E.2d at 686-87 (citing Corbin, *Contracts*, § 973)). I here bear in mind that with regard to the required showing, "the threshold is low. It is enough that the plaintiff's chances are better than negligible." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). Here, the plaintiff's chances to show that "an anticipatory breach [conditional in character] has been committed," Corbin, *Contracts*, § 973, are better than negligible.

If it seems odd to thus separate the situation of Watts and James Jones, it must be borne in mind that as signatory and non-signatory, respectively, to the deductible agreements, their situations are different. This should not be surprising. Signing a contract often has legal effects that do not apply to nonsignatorities, even if they are beneficiaries of the contract

16

signed.

IV.

I therefore G̲ʀ̲ᴀ̲ɴ̲ᴛ̲ the motion for a preliminary injunction with respect to Watts' claims, apart from the duty to defend in *Armenta*. I enjoin the California Superior Court from pursuing further proceedings in *Rothschild* as far as Watts goes, pending resolution of Zurich's petition to compel arbitration in that case, and I enjoin the California Superior Court from pursuing further proceedings in *Armenta*, again with respect to Watts, apart from enforcing its orders of October 30 and November 27, 2001, or other matters concerning the duty to defend and non-arbitrability of that duty in that case which was the subject of those orders. I Dɪsᴍɪss for want of subject matter jurisdiction Zurich's motion for a preliminary injunction enjoining the California Superior Court from pursuing further proceedings in *Armenta* relating to its orders of October 30 and November 27, 2001. I Dᴇɴʏ the motion for a preliminary injunction with respect to James Jones on any matter within my jurisdiction as to *Armenta* or *Rothschild*.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated:     June *10*, 2002

17