# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7673 | **DATE** | 9/9/2002 |
| **CASE TITLE** | Zurich American Insurance vs. Watts Industries, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order granting in part and denying in part plaintiff's petition to compel arbitration. Watts' motion for summary adjudication is denied. Plaintiff's motion to strike motion for summary adjudication is denied as moot. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 1 0 2002 | |
| | Docketing to mail notices. | | date docketed | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 145 |
| | Copy to judge/magistrate judge. | | 9/9/2002 | |
| | | | date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED

SEP 1 0 2002

ZURICH AMERICAN INSURANCE CO.,          )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )
                                        )
SUPERIOR COURT FOR THE STATE OF         )
CALIFORNIA, COUNTY OF LOS               )
ANGELES,                                )      No. 01 C 7673
                                        )
            Respondent,                 )
                                        )
WATTS INDUSTRIES, INC. and              )
JAMES JONES COMPANY                     )
                                        )
            Real Parties.               )
                                        )

### MEMORANDUM OPINION AND ORDER

Zurich American Insurance Co. ("Zurich") extended insurance
coverage to Watts Industries, Inc. ("Watts"). The policies included
coverage for Watts' subsidiary, James Jones Co. ("James Jones").
Watts also entered into separate deductible agreements with Zurich,
which James Jones did not sign. Watts and James Jones were sued by
third parties in the California state courts and Zurich refused to
pay defense costs in *Rothschild v. Tyco International*, No. 726930
(Cal. Super. Ct. San Diego, filed May 7, 1999), and *Armenta v.
James Jones Co.*, No. BC 173487 (Cal. Super. Ct. Los Angeles, filed
June 25, 1997). Watts and James Jones sued Zurich in the California
state courts, and Zurich petitioned in the Northern District of
Illinois to compel arbitration under the Federal Arbitration Act,

145

9 U.S.C. § 1 *et seq.* I deny the petition with respect to James Jones and grant the petition in part and deny it in part with respect to Watts.

I.

Watts entered into a series of six one-year commercial general liability insurance policies from June 30, 1991, to June 30, 1997. James Jones was an insured under the policies until it was sold by Watts in September 1996. It is undisputed that the policies themselves contain no arbitration provision. Zurich Stmt. of Facts ¶ 16. Watts also signed deductible agreements with Zurich in connection with those policies for three years: 1991-1992, 1992-1993, and 1996-1997. The deductible agreements contained broad arbitration provisions, requiring, for example, arbitration of "any dispute . . . between the Company and the Insured[1] with reference to the interpretation of this agreement or their rights with respect to any transaction involved, whether such dispute arises before or after the termination of the Agreement . . . ." *See, e.g.,* Ifft. Aff. Ex. 5 at MARSH00067 (1991-1992 Agreement). James Jones did not sign the deductible agreements.

Watts and James Jones have been involved in a coverage dispute with Zurich since early 2001. In February 2001, Watts sued Zurich

---

[1] The deductible agreements define Zurich as the "Company" and Watts as the "Insured." *See* Ifft. Aff. Ex. 5 at MARSH00060 (1991-1992 Agreement); Rohan Aff. Ex. 1 at ZUR000789 (1992-1993 Agreement). *See also* Rohan Aff. Ex. 9 at ZUR004062 (1996-1997 Agreement, defining "you" as Watts and "we" as Zurich).

2

in California state court for coverage under the policies, and in June 2001, James Jones filed a similar suit, which was consolidated with Watts' action. In August 2001, Zurich raised the deductible agreements as a defense to the coverage claim, stating that, even if it was liable, Watts was obligated under the deductible agreements to reimburse Zurich for the full cost of the defense. In September 2001, in response to the California court's instructions to the parties to attempt to work out a defense agreement, Watts sent a letter to Zurich.

In its letter of September 6, 2001, Watts made three arguments in response to Zurich's "settlement defense" under the deductible agreements: (1) that James Jones is not a party to the deductible agreements between Zurich and Watts, so they do not apply to James Jones, and as a result, that Zurich is obligated to defend James Jones and to reimburse Watts for amounts that Watts has spent on James Jones' defense; (2) that by wrongfully denying coverage in the underlying actions, Zurich repudiated both the policies issued to Watts and James Jones and the deductible agreements between Zurich and Watts because under the deductible agreements, Zurich "assume[d] responsibility for the investigation, defense and settlement obligations under this Agreement as respects the policies . . ." *See* Ifft. Aff. Ex. 5 at MARSH00064; (3) that Zurich waived any defense based on the deductible agreements by waiting three and a half years from notice of the *Armenta* and *Rothschild*

actions before mentioning the deductible agreements; and (4) that, even if the deductible agreements apply, Zurich is responsible for defense costs in excess of the $500,000 deductible. *See* Giller Aff. Ex. 25 at 2-3. Zurich responded on September 21, 2001, demanding arbitration of the issues identified in Watts' letter. *See* Giller Aff. Ex. 28.

Watts rejected the demand for arbitration on October 2, 2001, and Zurich filed this action on October 4, 2001. Watts filed a motion for summary adjudication in the California court, which the California court granted, in orders of October 30 and November 27, 2001, stating that Zurich had a duty to defend Watts in the *Armenta* action and that there was no arbitrable issue with respect to the duty to defend in *Armenta*.

In May, 2002, Zurich filed a motion for a temporary restraining order. The Superior Court of California had determined, in its orders of October 30 and November 27, 2001, that Zurich has a duty to defend Watts in the *Armenta* case, so I held that I lacked jurisdiction over that claim under the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). I concluded that Zurich demonstrated some likelihood of success on the merits of its claim that Watts' duty to defend in the *Rothschild* case was subject to arbitration under the deductible agreements. I entered

4

a temporary restraining order, pending my ruling on the duty to arbitrate, enjoining the courts and the parties from participating in or pursuing further proceedings with respect to (1) Zurich's duty to defend Watts or with respect to any other issues related to the insurance contracts alleged to be at issue in *Rothschild*, and (2) the scope and duties under deductible agreements between the parties in *Armenta*, apart from enforcing the California court's orders of October 30 and November 27, 2001. *See Zurich Am. Ins. Co. v. Superior Court for the State of Cal.*, 200 F. Supp. 2d 929, 934 (N.D. Ill. 2002).

On June 10, 2002, I issued a preliminary injunction as to Watts along the lines of the TRO, but I held that Zurich had not demonstrated a reasonable likelihood of success on the merits of its petition to compel arbitration against James Jones, which had not signed the deductible agreements containing the arbitration clauses. *See Zurich Am. Ins. Co. v. Superior Court for State of Cal.*, 205 F. Supp. 2d 964, 970 (N.D. Ill. 2002). I now consider the merits of Zurich's petition to compel arbitration, which seeks to compel both Watts and James Jones to arbitrate the issues raised by Watts in a September 6, 2001, letter and the September 21, 2001, response of Zurich.

## II.

James Jones did not sign the deductible agreements that contained the arbitration provisions at issue here, but Zurich

argues that the deductible agreements bound Watts and all entities on whose behalf Watts obtained coverage, including James Jones. "Arbitration is contractual by nature—'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Thomson-CSF, S.A. v. American Arbitration Ass'n.*, 64 F.3d 773, 776 (2d Cir. 1995). Although federal courts have acknowledged a broad "federal policy favoring arbitration," that policy "applies to the *scope* of an arbitration agreement entered into consensually by contracting parties; it does not serve to extend the reach of an arbitration provision to parties who never agreed to arbitrate in the first place." *Grundstad v. Ritt*, 106 F.3d 201, 205 n.5 (7th Cir. 1997).

It does not follow that the obligation to arbitrate attaches only to the persons who sign an arbitration agreement, however; "a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.'" *Id.* There are five ways to bind nonsignatories to arbitration agreements: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF*, 64 F.3d at 776; *see also Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002) ("[T]here are several ways that a non-signatory can be bound by a contract, such as through the doctrines of assumption, agency, equitable estoppel, veil piercing, and incorporation by reference.").

6

Zurich does not argue that the insurance policies that cover James Jones incorporate the deductible agreements by reference or that James Jones has manifested an intent to assume the obligation to arbitrate. *See Thomson-CSF*, 64 F.3d at 776. It does not explicitly invoke a theory of agency or alter ego, but it argues that Watts acted for James Jones when it entered into the deductible agreement because of the parent-subsidiary relationship. However, a mere parent-subsidiary relationship "does not create the relation of principal and agent or alter ego between the two." *See Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 756 (Ill. App. Ct. 2000). Moreover, Watts did not enter into the 1992-1993 and 1996-1997[2] agreements until 1997, after it sold James Jones to a third party in September 1996, so not even a parent-subsidiary relationship existed at that time.

Finally, Zurich argues that James Jones should be estopped from avoiding the arbitration provision of the deductible agreement. Estoppel applies where a nonsignatory knowingly seeks benefits under the contract that contains the arbitration provision but nevertheless seeks to avoid the obligation of arbitration. *See Thomson-CSF*, 65 F.3d at 778. Zurich argues that a nonsignatory may be bound by an arbitration clause where claims against two

---

[2] A provision of the 1996-1997 deductible agreement states that "[Watts] and each named insured stated in the Policy(ies) shall be jointly and severally responsible for the obligations under this Agreement." Rohan Aff. Ex. 9 at ZUR(04067 (under heading "Payments Due").

affiliated companies--one signatory and one non-signatory--are based on the same facts and are inherently inseparable. *See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988). That case involved a nonsignatory who wanted to compel a signatory to arbitrate, which is the "inverse" of the situation here, where a signatory seeks to compel a non-signatory. *See Thomson-CSF*, 64 F.3d at 779; *see also Prosherd Holdings Ltd. v. Conestoga Document & Product Destruction, Inc.*, No. 02 C 1551, 2002 WL 1067328, at *4 (N.D. Ill. May 28, 2002) (Castillo, J.).

Zurich cites one case in which a court has held that a signatory may bind a nonsignatory to an arbitration provision, but in that case, the nonsignatory was a third party beneficiary of a contract which contained an arbitration clause, and the nonsignatory had sought the benefits of rights under the agreement. *See Gerig v. Kahn*, 769 N.E.2d 381, 384-85 (Oh. 2002). Here the arbitration clause is in a separate contract from the insurance policy of which James Jones is a beneficiary. Zurich argues that the insurance policy is part of a "program" that necessarily includes the deductible agreements, but it has not demonstrated that James Jones is a third party beneficiary of the deductible agreement, or that James Jones is attempting to enforce any rights under the deductible agreements, as opposed to the insurance policies. *See Thomson-CSF*, 65 F.3d at 779 (holding that, in order

to equitably estop nonsignatory, nonsignatory must *directly* benefit from the contract containing the arbitration clause; indirect benefit is insufficient).

Zurich also argues that the "link" between the duty to defend under the policies and the deductible agreements made by Watts in its September 6, 2001, letter is attributable to James Jones as an unambiguous intent to agree to the obligation to arbitrate. James Jones was copied on the letter, but did not sign it. The only position taken on behalf of James Jones in the letter is that the deductible agreements do not apply to James Jones. Zurich argues that James Jones has not disclaimed the "link" argument made by Watts, but that argument was not made on James Jones' behalf, so there was nothing to disclaim. Even so, the failure to disclaim a position taken by another party falls short of an "unambiguous intent to be bound by the arbitration clause." *See Proshred Holdings Ltd. v. Conestoga Document and Prod. Destruction, Inc.*, No. 02 C 1551, 2002 WL 1067328, at *3 (N.D. Ill. May 28, 2002) (Castillo, J.). Finally, in the answer filed by James Jones on July 2, 2002, it asserts the following affirmative defense: "Jones alleges that to the extent that any agreement was reached between Jones and Zurich, Zurich has breached such agreements and thus Zurich may not enforce any such agreements." This does not explicitly invoke the deductible agreement, and even so, it is simply an argument made in the alternative to James Jones' main

contention--that it is not bound by the deductible agreements. James Jones is not estopped by an affirmative defense made in the alternative to its central argument that it is not bound by the deductible agreements.

### III.

To prevail on a petition to compel Watts to arbitrate under § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, Zurich must show that there is a written instrument indicating a mutual intent to arbitrate, that there is a dispute within the scope of the arbitration agreement, and that there has been a refusal to arbitrate. Watts, as a signatory of the deductible agreements with Zurich, is clearly bound to arbitrate disputes within the scope of the arbitration provision, and it rejected Zurich's demand for arbitration of the four issues raised in the September 6 letter. *See* Giller Aff. Ex. 29. The only question is whether those issues are within the scope of the arbitration agreement. I have already determined that the issue with respect to James Jones is not arbitrable.

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

10

"To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999).

As a preliminary matter, Watts argues in a separate motion for summary adjudication[3] that Zurich has waived the right to insist on arbitration by waiting too long--until September 2001--to demand arbitration. Watts first tendered the *Armenta* and *Rothschild* actions to Zurich in 1998, but Zurich denied coverage several times before Watts filed suit in February 2001. The California litigation was seven months old before Zurich demanded arbitration, and Zurich had participated in the California proceedings, including some discovery. Watts argues that this behavior constitutes a waiver. Because of the policy in favor of arbitration, doubts about waiver are to be resolved in favor of arbitration, *Moses H. Cone*, 460 U.S. at 24-25, and although the party resisting arbitration need not demonstrate prejudice from waiver, *see Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995), waiver should not be lightly inferred, *St. Mary's Med. Center of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 590 (7th Cir. 1992).

---

[3] I construe this as a motion for partial summary judgment under Fed. R. Civ. P. 56.

Watts bases its claim of waiver on Zurich's participation in the California coverage action, including requesting adjudication of the duty to defend in the *Rothschild* case, participation in a hearing and status conference, a representation that it "was not aware of any arbitration clauses which might apply" in a Joint Initial Status Conference Report, and participation in a settlement conference and discovery. However, Watts was the party that commenced the action, and Zurich's participation was essentially defensive in character, not offensive. *Cf. Knorr Brake Corp. v. Harbil, Inc.*, 556 F. Supp. 489, 492 (N.D. Ill. 1983) (Shadur, J.) (Filing of counterclaim, unlike filing answer and participating in discovery, was "offensive rather than defensive in character.").

Watts argues that Zurich succeeded in having the coverage case assigned to the complex litigation program in the California court, and that this constitutes a forum choice that is an election to proceed before a nonarbitral tribunal. *See Cabinetree*, 50 F.3d at 390 ("[A]n election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate."). But the transfer question arose in April 2001, when the dispute in the California court revolved only around coverage, and the specter of the deductible agreements had not yet been raised. The applicability of the deductible agreements did not arise until August 2001, when Zurich raised them as a potential defense to coverage. It was in response to this claim by Zurich

that Watts wrote the September 6, 2001, letter claiming that Zurich's failure to defend was a breach of the deductible agreements, which stated that Zurich "assumes responsibility for the investigation, defense and settlement obligations under this Agreement as respects the policies . . . ."

In essence, Watts claims that Zurich should have known sooner that it would raise the deductible agreements as a defense. However, little had happened in the litigation as of August 2001. The parties had attended a status conference and a settlement conference, but Zurich had not even filed its answer to the complaint. Watts argues that Zurich waited to raise the issue of the deductible agreements until many years after *Armenta* and *Rothschild* had been tendered to Zurich for a defense, but looking at the totality of the circumstances, it was still quite early in the litigation.[4] Nor is it clear that simply raising the issue of the deductible agreements alone would be enough to create an arbitrable issue; as I discuss below, until the duties under the deductible agreement were disputed in the September 6, 2001,

_____

[4] Watts cites an Illinois case for the proposition that an insurer can waive arbitration by waiting to make a demand for arbitration until two years after the claim was tendered and eight and a half months after the lawsuit had commenced, *see Yandell v. Church Mut. Ins. Co.*, 654 N.E.2d 1388, 1390 (Ill. App. Ct. 1995), but the arbitration clause in that case was optional, and the court there specifically distinguished cases finding that mandatory arbitration could not be waived by mere delay or responsive participation in litigation. Moreover, there was no question in that case of *when* the arbitrable issue was injected into the litigation.

letter, there was no dispute *under the deductible agreements*. Once that dispute arose, Zurich waited less than a month before filing a petition to compel arbitration and sought a stay in the California action pending arbitration. Zurich did not wait too long to demand arbitration, so I will not infer a waiver from its actions.[5] The motion for summary adjudication on this issue is denied.

Watts also argues that the petition to compel arbitration is too early. It argues that the demand for arbitration under the deductible agreements is premature because the duty to reimburse under the deductible is triggered by Zurich's payment, and Watts says that Zurich has not "paid a dime in Policy benefits." Watt's Mem. in Opposition at 3. In the first place, however, that is no longer true. By letter of September 6, 2002, to which photocopies of checks are attached, Zurich informs me that it has now paid $16,426,580.32 in defense costs (some of which are to Jones but include payments to Watts) in the *Armenta* action. Furthermore, in my order of June 10, 2002, I held that Zurich had demonstrated a reasonable likelihood of proving that Watts had conditionally

---

[5] Watts also argues that Zurich's actions since filing the petition to compel arbitration constitute waiver; in essence, it argues that Zurich has not pursued arbitration vigorously enough. Although Zurich waited until May 2002, seven months after the California court's order regarding the arbitrability of the duty to defend in *Armenta*, to seek a TRO, Watts provides no support, nor does my research uncover any, for the proposition that a party can waive arbitration despite having filed a petition to compel it under the FAA.

anticipatorily repudiated the deductible agreement in its letter of September 6, 2001, because it had demanded, under the deductible agreement, a defense from Zurich. I held that this was a conditional anticipatory repudiation because Watts did not actually offer an interpretation of a contested provision that Zurich supposedly breached, and because Watts made clear that it would not perform under the deductible agreement unless Zurich paid for defense costs incurred by Watts and James Jones.

Watts explains now that it did not offer an interpretation of a contractual provision because its position on the duty to defend was made clear elsewhere. Nonetheless, Zurich need not actually demonstrate that Watts breached or repudiated the deductible agreement; it need only demonstrate the existence of "any dispute . . . between [Zurich] and [Watts] with reference to the interpretation of this agreement or their rights with respect to any transaction involved . . . ." (1991-1992 Agreement). To demonstrate a "dispute," Zurich "must show that [Watts] has acted, or has threatened to act, in a manner inconsistent with [Zurich]'s interpretation of the contract." *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 860 F.2d 1420, 1426 (7th Cir. 1988). Watts' statements that Zurich had repudiated the deductible agreement by denying a defense, Watts' proposed terms required Zurich to pay defense costs, and its statement that Zurich was obligated to pay for any defense above the $500,000 deductible were

a sufficient threat that Watts would not perform its reimbursement obligations even if Zurich paid.

I therefore GRANT the petition to compel arbitration in part with respect to the following questions on which Zurich has demanded arbitration: (1) as to *Armenta*, whether Zurich's breach of the duty to defend found by the California court constituted a repudiation by Zurich of the deductible agreement; (2) as to *Rothschild*, whether the provision of the 1991-1992 deductible agreement stating that Zurich "assumes responsibility for the investigation, defense and settlement obligations under this Agreement as respects the policies . . ." creates a duty to defend under the deductible agreement, and if so whether it was breached, and if so whether that constitutes a repudiation of the deductible agreement; and (3) with respect to *Rothschild*, what the obligations of the parties are with respect to payment and reimbursement of defense costs above the $500,000 deductible. I DENY it in part with respect to the question of James Jones' obligations and the question of whether Zurich waived arbitrability. Watts' motion for summary adjudication is DENIED, and the motion to strike it is DENIED as moot.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated:     September 9, 2002

16