

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Zurich American Insurance        )
Company,                         )
                                 )
            Petitioner,          )
                                 )
    v.                           )    No.  01 C 7673
                                 )
Watts Industries, Inc., and      )
James Jones Company              )
                                 )
            Respondents.         )

## MEMORANDUM OPINION AND ORDER

Zurich American Insurance Company ("Zurich") and Watts Industries, Inc. ("Watts") entered into a series of six successive one-year insurance policies between mid-1991 and mid-1997. The policies did not contain arbitration clauses. The parties also entered into six separate one-year deductible agreements corresponding to each policy. Each deductible agreement contained a broad arbitration clause.

In 1997 and 1998, two actions were brought against Watts and its subsidiary, the James Jones Company, in California: *Los Angeles Department of Water and Power, et al. ex rel. Armenta v. James Jones Co., et al.*, Los Angeles Superior Court, Case No. BC 173487 ("*Armenta*"), and *Rothschild v. James Jones, Co.*, San Diego County Superior Court, Case No. 726930 ("*Rothschild*"). Disputes surrounding Zurich's duty to defend these two actions set off a wave of litigation in both this court and California. The long

history of the litigation between the two parties has been chronicled elsewhere. *See e.g. Zurich Am. Ins. Co. v. Superior Court for Cal.,* 200 F. Supp. 2d 929 (N.D. Ill. 2002); *Zurich Am. Ins. Co. v. Superior Court for Cal.,* 326 F.3d 816 (7th Cir. 2003); *Zurich Am. Ins. Co. v. Watts Indus.,* 417 F.3d 682 (7th Cir. 2005). Therefore, I turn directly to the issue before the court.

On September 9, 2002, I issued an order to compel arbitration between Zurich and Watts. Both parties appealed that order. On appeal, the Seventh Circuit modified the order and remanded the case for further factual findings. After the appeal, the parties are left with an order compelling arbitration of two issues: "1) whether Zurich repudiated the deductible agreement by breaching the duty to defend *Armenta* and 2) what obligations the parties have with respect to the deductible agreements." *Zurich v.* Watts, 417 F.3d 682, 686-87 (7th Cir. 2005). In remanding the case, the Seventh Circuit stated:

> We have already discussed the fact that Watts is bound to arbitrate any dispute that amounts to a differing interpretation than Zurich's of a given deductible agreement. The district court did not make a finding regarding which deductible agreements the parties dispute. Noting that the court is not to rule on the potential merits of the underlying claims . . . we will remand to the district court to identify precisely which agreements the parties' dispute arises under, and thus under which agreements their obligations and rights may be arbitrated. *Id.* at 691.

Zurich argues that there are disputes under all six deductible agreements and that all six agreements should be submitted to

2

arbitration. In order to compel arbitration under each agreement, "[Zurich] need only show a written agreement to arbitrate, a dispute within the scope of the agreement, and a refusal by Watts to arbitrate." *Zurich*, 417 F.3d at 690. Since the first and third elements are uncontested, Zurich need only show a dispute within the scope of the arbitration clause of each of the six deductible agreements. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649-50 (1986) ("The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.").

Each of the deductible agreements contains a broad arbitration clause that makes any dispute arising out of the agreement subject to arbitration. For example, the 1991-92 agreement states "if any dispute shall arise between the Company and the Insured with reference to the interpretation of this Agreement or their rights with respect to any transaction involved . . . such dispute . . . shall be submitted to . . . arbitrators. . . ." Zurich argues that the terms of this deductible agreement entitle it to recover defense costs incurred defending *Armenta*. Watts disagrees. This conflicting interpretation of the agreement is a "dispute between

the Company and the Insured with reference to the interpretation of th[e] Agreement or their rights with respect to any transaction involved. . . . " Therefore, Zurich has articulated a dispute within the scope of the arbitration clause of the 1991-92 agreement. For the same reasons, Zurich has also articulated a dispute within the scope of the arbitration clauses of the other five agreements.

Watts argues, on the other hand, that there are not any actual disputes under the 1991-94 and 1996-97 deductible agreements because the defense costs for which Zurich seeks reimbursement arose exclusively under the 1994-96 policies. To reach this conclusion, Watts suggests the court implement the following two-step analysis. First, the court should accept the prior judgment of a California court finding that defense costs in *Armenta* were allocable only to the 1994-96 policies. Second, the court should analyze the effect of that finding on the deductible agreements and conclude that Watts may only recover the 1994-96 defense costs under the 1994-96 deductible agreements.

Watts first argues that this approach determines the scope of the arbitrable disputes and does not require the court to reach the merits of the dispute. I disagree. Watts' argument does not show that a dispute over recovery of defense costs is not within the broad language of the deductible agreements, but rather requests that this court examine the facts surrounding Zurich's claims to

4

defense costs, interpret the deductible agreements to understand how they operate in connection with the policies, and reject Zurich's claims because they lack merit. Alternatively, Watts argues that this is the exceptional case where "a court's decision on arbitrability 'collapses into the same inquiry' as a decision on the merits" and a court may therefore reach the merits of the claim. *BCS Ins. Co. v. Wellmark, Inc.*, 410 F.3d 349, 352 (7th Cir. 2005). In this case, I am able to determine that a dispute over recovery of defense costs is within the scope of the arbitration clauses of the deductible agreements without determining under which policies the defense costs arose. Therefore, Zurich's claims do not fit into the narrow exception articulated in *Wellmark*.

Furthermore, Watts' approach makes the assumption that the court, and not an arbitrator, must determine the collateral estoppel effect of the California judgment on Zurich's claims. The Supreme Court has recently emphasized that the questions of arbitrability that are to be decided by a court are limited. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). These questions involve issues such as "the validity of the arbitration clause [or] its applicability to the underlying dispute between the parties." *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 453 (2003); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004) ("*Howsam* states that, unless an arbitration agreement otherwise stipulates, a court is

5

empowered only to determine the 'substantive' issue of arbitrability -- that is, whether a particular dispute falls within the scope of an arbitration clause -- and the necessary threshold question of whether that clause is enforceable.") Other gateway issues of arbitrability, *e.g.* waiver or estoppel, are "procedural" and are to be referred to an arbitrator for consideration. *Howsam*, 537 U.S. at 84; *Klay*, 376 F.3d at 1109.

In this case, evaluating the collateral estoppel effect of the the California court's finding does not challenge the validity of the arbitration clause or call into question whether the stated dispute is within the scope of the arbitration clause. Therefore, the effect of the prior judgment on this dispute is a question to be decided by an arbitrator. *Klay,* 376 F.3d at 1109 (stating that, after *Howsam,* preclusion issues are to be decided by an arbitrator.); *See also United States Fire Ins. Co. v. National Gypsum Co.*, 101 F.3d 813 (2d. Cir. 1996) (a pre-*Howsam* case holding that "a defense based on the issue-preclusive effect of the prior judgment is part of the dispute on the merits."). The broad language of the arbitration clauses in the deductible agreements supports the conclusion that the parties intended for an arbitrator to decide this issue.

For the above reasons, the court finds that there are disputes under all six deductible agreements. Arbitration may proceed under all six deductible agreements and the arbitrator may determine the

effect of the California court's prior judgment on the parties' claims.

**ENTER ORDER:**

Elaine E Bucklo

**Elaine E. Bucklo**
United States District Judge

Dated:   January 31, 2006